# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38059

SILVER EAGLE MINING COMPANY, (as
successor-in-interest to ABERDEEN IDAHO
MINING COMPANY),

    Plaintiff-Appellant,

v.

STATE OF IDAHO, and its successors and
assigns; JOHN DOES I-X, and their heirs,
successors, and assigns; and UNKNOWN
OWNERS AND UNKNOWN CLAIMANTS,
and their heirs, successors, and assigns, and
any other person claiming any title, right,
interest, or equity in the following described
property location in the County of Shoshone,
State of Idaho, to wit:  (see file for complete
description of property),

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, April 2012 Term

2012 Opinion No.  100

Filed:  June 29, 2012

Stephen Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Shoshone County.  Hon. Lansing L. Haynes, District Judge.

The district court's grant of summary judgment is <u>affirmed</u>.

John F. Magnuson, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents.  Steven Schuster argued.

---

HORTON, Justice.

This matter arises out of a dispute between Silver Eagle Mining Co. (Silver Eagle) and the State of Idaho (State) regarding ownership of property in Shoshone County on which Silver Eagle had located sixteen mining claims. After Silver Eagle filed an action against the State of Idaho (State) to quiet title in the mining claims, the district court granted summary judgment in favor of the State on the ground of claim preclusion because the Department of the Interior Board of Land Appeals (IBLA) had previously found Silver Eagle's mining claims void *ab*

1

*initio*. Silver Eagle appeals, arguing that claim preclusion does not apply because the IBLA decision did not address the same claim as Silver Eagle's present action against the State. Additionally, Silver Eagle contends that the State is collaterally estopped from asserting title to the subject property and asks this Court to vacate the judgment of the district court and enter judgment in its favor. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Aberdeen Idaho Mining Company (Aberdeen), Silver Eagle's predecessor-in-interest, located sixteen mining claims on the property that is the subject of this appeal (the subject property) between July 6, 1940 and August 10, 1951:

| IMC CLAIM NO. | CLAIM NAME | LOCATION DATE |
| --- | --- | --- |
| 17737 | Wilkie No. 21 | August 10, 1951 |
| 17744 | Wilkie No. 6 | July 6, 1940 |
| 17745 | Wilkie No. 19 | October 9, 1946 |
| 17746 | Wilkie No. 9 | July 28, 1945 |
| 17747 | Wilkie No. 10 | July 28, 1945 |
| 17748 | Wilkie No. 20 | October 9, 1946 |
| 17749 | Wilkie No. 19Fra. | October 19, 1946 |
| 17750 | Wilkie No. 9Fra. | October 9, 1946 |
| 17751 | Wilkie No. 12 | September 1, 1945 |
| 17752 | Wilkie No. 12Fra. | October 10, 1946 |
| 17754 | Wilkie No. 8 | July 6, 1940 |
| 17755 | Wilkie No. 15Fra. | October 15, 1946 |
| 17756 | Wilkie No. 14 | August 12, 1945 |
| 17757 | Wilkie No. 15 | September 1, 1945 |
| 17758 | Wilkie No. 16 | August 19, 1945 |
| 17759 | Wilkie No. 17 | August 19, 1945 |

The claims at issue are located in Section 16, Township 48 North, Range 3 East, Boise Meridian, Shoshone County, Idaho (Section 16), and Aberdeen maintained the claims in accordance with all federal requirements.

In September of 1999, the Bureau of Land Management (BLM) issued a decision declaring that all sixteen of Aberdeen's claims were void *ab initio* because Section 16 was not open for mineral entry at the time Aberdeen located the claims. The following month, Aberdeen filed a notice of appeal with the IBLA. Aberdeen also filed a quiet title action in the district court

of the First Judicial District of Idaho in February of 2000 and later amended its complaint to include a claim for declaratory relief. The district court granted the State's motion to stay the proceedings pending resolution of Aberdeen's appeal to the IBLA. On October 1, 2001, the IBLA affirmed the BLM's determination that Aberdeen's mining claims were void *ab initio*, and neither Aberdeen nor Silver Eagle appealed this decision. Aberdeen conveyed its interest in the subject mining claims to Silver Eagle on May 16, 2002 and the district court substituted Silver Eagle as plaintiff in the present action on May 13, 2008. Upon stipulation by the parties, the district court lifted the stay on May 27, 2008. On July 28, 2008, the district court granted summary judgment in favor of the State on the ground that the IBLA decision was a valid final judgment that adjudicated the same claim between the same parties as the quiet title action, and Silver Eagle was therefore barred from further litigation by the doctrine of claim preclusion. Silver Eagle appeals and asks this Court to vacate the district court's judgment and enter judgment in its favor or, alternatively, remand for further proceedings.

## II. ISSUES ON APPEAL

1. Whether the doctrine of claim preclusion (res judicata) bars Silver Eagle's claim to quiet title as against the State.

2. Whether the doctrine of issue preclusion (collateral estoppel) prevents the State from asserting its claim to title.

3. Whether the doctrine of quasi-estoppel precludes summary judgment.

## III. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment using the same standard a district court uses when it rules on the motion. *Waller v. Idaho Dep't of Health & Welfare*, 146 Idaho 234, 237, 192 P.3d 1058, 1061 (2008) (citing *Ticor Title Co. v. Stanion,* 144 Idaho 119, 122, 157 P.3d 613, 616 (2007)). Thus, summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Under this standard, the "facts are viewed in a light most favorable to the nonmoving party." *Waller*, 146 Idaho at 237, 192 P.3d at 1061 (citing *Ticor Title Co.,* 144 Idaho at 122, 157 P.3d at 616).

"*Res judicata* is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Navarro v. Yonkers,* 144 Idaho 882, 885, 173 P.3d 1141, 1144 (2007)

3

(quoting *Hindmarsh v. Mock,* 138 Idaho 92, 94, 57 P.3d 803, 805 (2002)). "This Court exercises free review over the question of whether an action is barred by res judicata." *Kootenai Elec. Co-op., Inc. v. Lamar Corp.*, 148 Idaho 116, 119, 219 P.3d 440, 443 (2009) (citing *C Sys., Inc. v. McGee,* 145 Idaho 559, 561, 181 P.3d 485, 487 (2008)). Generally, estoppel theories "present mixed questions of law and fact." *Allen v. Reynolds*, 145 Idaho 807, 812, 186 P.3d 663, 668 (2008) (citing *The Highlands, Inc. v. Hosac,* 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997)). However, mixed questions are primarily questions of law, and therefore this Court exercises free review. *Id.*

## IV. ANALYSIS

**A. Silver Eagle's claim is precluded by the IBLA decision.**

Silver Eagle argues that claim preclusion does not apply because the claim adjudicated by the IBLA decision and Silver Eagle's claim in the district court are not the same. Silver Eagle asserts that the IBLA decision determined only that the BLM did not act contrary to federal law when it found Silver Eagle's mining claims void *ab initio*. In contrast, Silver Eagle contends that its claim in the district court is based upon the state-law doctrine of collateral estoppel. We disagree. The IBLA proceedings were a prior action between Silver Eagle and the State, and the IBLA decision resulted in a valid final judgment that Silver Eagle had no valid mining claims in which it could assert title. We therefore hold that Silver Eagle's action in the district court is barred by the doctrine of claim preclusion.

### 1. Federal claim preclusion law applies.

As a preliminary matter, we note that federal claim preclusion principles apply in this case because the IBLA is a federal agency that decided Silver Eagle's appeal based upon federal law. The Supreme Court of the United States has held that:

> The preclusive effect of a federal-court judgment is determined by federal common law. See *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507–508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). For judgments in federal-question cases . . . federal courts participate in developing "uniform federal rule[s]" of res judicata, which this Court has ultimate authority to determine and declare. *Id.,* at 508, 121 S.Ct. 1021.

*Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (footnote omitted); *see also Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994) ("State courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law."); *Knox v. State ex rel.*

4

*Otter*, 148 Idaho 324, 338, 223 P.3d 266, 280 (2009) ( "Under federal law, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" (citation omitted)). The United States Supreme Court has also held that the decisions of federal administrative agencies, such as the IBLA, have the same preclusive effect so long as the "agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate . . . ." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991) (citing *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966)). Silver Eagle's claim was properly before the IBLA[1] and centered on the validity, under federal law, of its mining claims. Therefore, federal claim preclusion principles apply.

Under the federal claim preclusion rules, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n.2 (1981)). In other words, between the same parties, "a valid final adjudication of a claim precludes a second action on that claim. . . ." *Id.* (quoting *Baker v. Gen. Motors Corp.,* 522 U.S. 222, 233, n.5 (1998)). Further, "when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (quotation omitted).

2. The elements of federal claim preclusion are satisfied.

Claim preclusion is an affirmative defense that must be proved by the party asserting it. *Taylor*, 553 U.S. at 907 (citations omitted). Therefore the State must demonstrate that the prior action: (1) was between the same parties or their privies; (2) involved the same claim as the current action; and (3) resulted in a valid final judgment on the merits. We hold that each element is met.

---

[1] *Hoefler v. Babbitt*, 139 F.3d 726, 728 (9th Cir. 1998) (holding that the Department of the Interior "is fully empowered to determine whether a [mining] claim, such as the one before this Court, is valid and, if it finds the claim invalid, the Department may declare the claim null and void.") (citations omitted).

5

a. The IBLA appeal was between the same parties as the quiet title action.

For claim preclusion to apply, the parties in the subsequent case must be the same as in the prior case, or in privity with them. Privity exists where an entity not a party to the previous action is "so identified in interest with" an entity that was a party to the previous litigation "that he represents precisely the same right in respect to the subject matter involved." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005) (quoting *In re Schimmels,* 127 F.3d 875, 881 (9th Cir.1997)). A successor in interest is traditionally considered to be in privity with the predecessor party. *Id.* (citing Restatement (Second) of Judgments, §§ 43-61 (1982)).

In the proceedings before the IBLA, Aberdeen was the appellant and the State intervened as a co-respondent. Aberdeen was also the original plaintiff in the subsequent quiet title action against the State. After Silver Eagle succeeded to Aberdeen's interest in the subject mining claims, the district court granted Silver Eagle's motion for substitution and Silver Eagle became the plaintiff in that action against the State. Thus, for claim preclusion purposes, the parties in both proceedings were the same.

b. The claim at issue here is the same as the claim resolved by the IBLA.

Silver Eagle argues that the IBLA decision merely determined "that Silver Eagle's claims were located in a Section 16 to which the United States, under federal law, made no claim." Silver Eagle asserts that "the issue of ownership or entitlement to the claims, under state law, was specifically excluded from the IBLA decision," and therefore claim preclusion does not apply. This argument is without merit.

A prior judgment, if it satisfies the other elements of claim preclusion, "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001)). "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring 'claims arising from the same transaction.'" *United States v. Tohono O'Odham Nation*, ___ U.S. ___, 131 S. Ct. 1723, 1730 (2011) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 482, n.22 (1982)). The test has also been described as "whether the two suits share a common nucleus of operative fact." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citing *Int'l Union v. Karr,* 994 F.2d 1426, 1429-30 (9th Cir. 1993)).

6

In *Mpoyo*, an employee filed several Title VII claims against his former employer. *Id.* at 986. After discovery was complete, the employee requested leave to amend his complaint to include other federal claims. *Id.* The district court denied leave to amend and granted summary judgment in favor of the employer on the remaining claims. *Id.* The Ninth Circuit affirmed the judgment on appeal. *Id.* While his first case was on appeal, the employee brought a new action in the district court, alleging the federal claims he was not permitted to bring in the prior case. *Id.* The district court dismissed those claims on the ground of claim preclusion. *Id.* at 987. On appeal, the Ninth Circuit found that because the two claims arose from the employee's conduct while he was employed "and specifically from the events leading to his termination, his claims relate to the same set of facts." *Id.* Therefore, the subsequent claim arose from the same transaction as the previous claims and was the same claim for the purpose of claim preclusion analysis. *Id.* Thus, regardless of how a claim is brought, if it arises out of the same facts as the already-decided claim, it is the same claim for purposes of claim preclusion.

In this case, the validity of Silver Eagle's mining claims was the primary issue before the IBLA. First, the BLM held that Silver Eagle's mining claims were void *ab initio* after finding that title to the subject property had passed to the State *before* the mining claims were located and that the property was therefore not open to mineral entry at the time of location. *Aberdeen Idaho Mining Co.*, 155 IBLA 358, 359 (2001).

Silver Eagle then appealed, asserting the validity of its mining claims before the IBLA. *Id.* at 361. The State claimed that it owned the subject property, and Silver Eagle argued that title passed back to the United States in 1952 when the State filed Indemnity List 853 pursuant to the Indemnity Lieu Selection Act,[2] which designated the subject property as "base lands" to be exchanged with the United States government for other federal land ("lieu lands"). *Id.* at 362. Silver Eagle argued that under federal law, Idaho's filing constituted a waiver of the State's claim to title in the property and that title thus had passed to the United States when List 853 was filed. *Id.* Silver Eagle then argued that by operation of the *Noonan* Rule,[3] Silver Eagle's mining claims were "validated" when the title passed back to the United States. *Id.* However, in its

---

[2] *See* 43 U.S.C. §§ 851-52.
[3] *Noonan v. Caledonia Gold Min. Co.*, 121 U.S. 393, 403 (1887) (holding that "where a party was in possession of a mining claim on the twenty-eighth of February, 1877, with the requisite discovery, with the surface boundaries sufficiently marked, with the notice of location posted, . . . he could, by adopting what had been done, causing a proper record to be made, and performing the amount of labor or making the improvements necessary to hold the claim, date his rights from that day . . .").

decision affirming the BLM, the IBLA specifically held that Silver Eagle's *Noonan* Rule and federal law arguments were without merit and that "the lands simply never left the State's ownership."[4] *Id.* at 365.

Silver Eagle's mining claims are also the basis of its quiet title action in the district court. Silver Eagle contends that its claim in the quiet title action is a state law claim based upon issue preclusion and thus different from the claim resolved by the IBLA. However, "the standard that must be met for success in a quiet title action" is that "the party seeking to quiet title against another must succeed on the strength of his own title, and not on the weakness of that of his adversary." *Read v. Harvey*, 147 Idaho 364, 369, 209 P.3d 661, 666 (2009) (quoting *Pincock v. Pocatello Gold & Copper Min. Co.*, 100 Idaho 325, 331, 597 P.2d 211, 217 (1979)). Thus, Silver Eagle must assert its own title in order to prevail in a quiet title action, and therefore the actual claim in the district court must be based upon the validity of Silver Eagle's property interest in its mining claims, which was litigated in the IBLA proceeding. The relevant facts—the date the State took title to the subject property and the date Silver Eagle's mining claims were located— are the same in both cases. As in *Mpoyo*, Silver Eagle's claims were brought under different legal theories, but arise from the same factual circumstances. Therefore, we hold that the claim in the two actions is the same.

c.  The IBLA proceeding resulted in a valid final judgment.

On appeal from the BLM decision holding Silver Eagle's mining claims void *ab initio*, the IBLA considered the merits of Silver Eagle's claim and affirmed the decision. *Aberdeen*, 155 IBLA at 366. The IBLA is authorized to decide appeals from BLM decisions. 43 C.F.R. § 4.1(b)(2). A decision of the IBLA "is final agency action and is effective on the date it is issued, unless the decision itself provides otherwise." 43 C.F.R. § 4.403(a). Silver Eagle was entitled to judicial review of the IBLA decision. *See* 5 U.S.C. § 702 ("A person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). However, Silver Eagle did not exercise its right to appeal within the statute of limitations, and the IBLA decision is therefore a valid final judgment on the merits.

---

[4] The IBLA also stated that the actual date the State originally took title was irrelevant because it was no later than 1935 and Aberdeen's mining claims were not located until 1940. *Aberdeen*, 155 IBLA at 362.

d.  Public policy supports application of claim preclusion.

The policies that support the doctrine of claim preclusion support its application in this case. The United States Supreme Court explained that precluding "parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Each of these policies supports application in this case. First, the State is protected from repeated lawsuits if its title to Section 16 is conclusively established. Second, state court resources are conserved by avoiding litigation of this claim and others based upon it. Third, by precluding Silver Eagle's claim, the United States and the State take the consistent position that Silver Eagle does not own the subject property.

The IBLA's decision was a final valid judgment on the merits that adjudicated the same claim between the same parties, and we therefore hold that Silver Eagle's present action is precluded and the judgment of the district court is affirmed.

**B. The remaining issues on appeal are moot.**

Silver Eagle raised additional issues on appeal, related to whether the State is estopped from asserting its title to the subject property. Because we hold that Silver Eagle's claim is barred by claim preclusion, we do not reach those issues.[5] *See Summers v. Cambridge Jt. Sch. Dist. No. 432*, 139 Idaho 953, 957, 88 P.3d 772, 776 (2004); *Kohring v. Robertson*, 137 Idaho 94, 101, 44 P.3d 1149, 1156 (2002).

## V. CONCLUSION

We affirm the district court's grant of summary judgment in favor of the State on the ground that claim preclusion (res judicata) precludes Silver Eagle from relitigating its interest in the subject mining claims. Costs to the State.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

---

[5] We note that the subject mining claims are located on school endowment lands. Both the Idaho Admission Act and the Idaho Constitution provide that school endowment lands, such as the subject property in this case, may be disposed of only "at public sale." Idaho Const. art. IX, § 8; Idaho Admission Act § 5; 26 Stat. 215, 216. Thus, we question whether application of an equitable theory of estoppel to divest the State of its interests in school endowment lands would be permissible under the Idaho Constitution.